Hector Gutierrez
1015 Rosewood Ave.
Inglewood CA. 90301
424-200-1504
heg254@aol.com

FILED
CLERK, U.S. DISTRICT COURT
12/27/2025
CENTRAL DISTRICT OF CALIFORNIA
BY _____ GSA _____ DEPUTY
DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

**RDDJ**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| **HECTOR GUTIERREZ**, <br><br> Plaintiff, <br><br> vs. <br><br> **COUNTY OF LOS ANGELES, COUNTY OF LOS ANGELES SHERIFF DEPARTMENT, DEPUTY DOE BRITTO #624418, individually; DEPUTY DOE GARCIA # 624326, individually; and DOES 1-10, inclusive.** <br><br> Defendants, | Case No.: <br> 2:25-cv-12459-MCS-AS <br><br> **COMPLAINT FOR DAMAGES UNDER 42 U.S.C. § 1983 AND SUPPLEMENTAL STATE LAW CLAIMS** <br><br> **1. Malicious Prosecution (42 U.S.C. § 1983 - Fourth Amendment)** <br> **2.Excessive Force - Unjustified Felony Stop (42 U.S.C. § 1983 - Fourth Amendment)** <br> **3.Fabrication of Evidence / False Statements (42 U.S.C. § 1983 - Fourteenth Amendment Due Process)** <br> **4.Unlawful Prolonged Detention (42 U.S.C. § 1983 - Fourth Amendment)** <br> **5.Failure to Investigate / Reckless Disregard for Constitutional Rights (42 U.S.C. § 1983 - Fourth Amendment)** |

**6. Unlawful Search (42 U.S.C. § 1983 - Fourth Amendment)**
**7. First Amendment Retaliation (42 U.S.C. § 1983 - First Amendment)**
**8. Failure to Intervene (42 U.S.C. § 1983 - Fourth Amendment)**
**9. Denial of Due Process - Wrong Venue/Forum (42 U.S.C. § 1983 - Fourteenth Amendment)**
**10. Conspiracy to Violate Civil Rights (42 U.S.C. § 1985(3))**
**11. Municipal Liability - Monell Claim (42 U.S.C. § 1983) Against Defendant County of Los Angeles, County of Los Angeles Sheriff Department**

**JURY TRIAL DEMANDED**

# I. NATURE OF ACTION

1. This is a civil rights action arising under 42 U.S.C. § 1983 for violations of Plaintiff's rights under the Fourth Amendment (unreasonable seizure, excessive force, unlawful search, malicious prosecution, fabrication of evidence), First Amendment (retaliation for protected speech), and Fourteenth Amendment (due process, fabrication of evidence) to the United States Constitution. Plaintiff seeks compensatory damages, punitive damages, attorney's fees, costs, and such other relief as the Court deems just and proper.

2. On December 27, 2022, Defendants Deputy Britto and Deputy Garcia, deputies employed by the Los Angeles County Sheriff's Department, conducted an unjustified felony stop of Plaintiff at gunpoint, detained him for over 40 minutes, falsely claimed he had a warrant for his arrest, falsely claimed he was not the person identified on his driver's license even after verification, refused to investigate readily available exculpatory evidence (Plaintiff's visible front license plate), unlawfully searched his vehicle, retaliated against him for asserting his constitutional rights, and ultimately issued a defective citation directing him to the wrong courthouse—all without probable cause and in reckless disregard of Plaintiff's constitutional rights.

3. Defendants then pursued a malicious prosecution against Plaintiff based on fabricated claims and false statements, causing Plaintiff to suffer ongoing fear, emotional distress, and deprivation of liberty for two years until the citation expired by operation of law on December 27, 2024.

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343 (civil rights jurisdiction).

## II. JURISDICTION AND VENUE

5. This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3) and (4) (civil rights jurisdiction).

6. Plaintiff's claims arise under the Fourth, First, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this District and the events giving rise to this action occurred in this District.

8. This case is assigned to the Western Division of the Central District of California because the acts complained of occurred in Los Angeles County within the boundaries of the Western Division.

## III. PARTIES

### A. Plaintiff

9. Plaintiff HECTOR GUTIERREZ is an individual residing in Los Angeles County, California, and is a citizen of the United States. At all times relevant to this Complaint, Plaintiff was a resident of Los Angeles County.

1
2
3
4

**B. Defendants**

5
6
7

10. Defendant DEPUTY BRITTO (first name unknown) is sued in his individual capacity. At

8

all times relevant to this Complaint, Britto was employed as a deputy sheriff by the Los

9

Angeles County Sheriff's Department, assigned to the Transient Services Bureau (Metro),

10

Employee ID 624418. Britto was acting under color of state law and within the course

11

and scope of his employment when he committed the acts alleged herein.

12
13

11. Defendant DEPUTY GARCIA is sued in his individual capacity. At all times relevant to

14

this Complaint, Garcia was employed as a deputy sheriff by the Los Angeles County

15

Sheriff's Department, assigned to the Transient Services Bureau (Metro), Badge Number

16
17

624326. Garcia was acting under color of state law and within the course and scope of his

18

employment when he committed the acts alleged herein.

19
20

12. Defendant COUNTY OF LOS ANGELES is a municipal entity organized under the laws

21

of the State of California. The County operates and maintains the Los Angeles County

22

Sheriff's Department. The County is sued for municipal liability pursuant to *Monell v.*

23

*Department of Social Services*, 436 U.S. 658 (1978), based on policies, customs,

24
25

practices, and failures to train and supervise that caused the constitutional violations

26

alleged herein.

27
28

13. At all times relevant to this Complaint, Defendants Britto and Garcia were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of California and the County of Los Angeles and the County of Los Angeles Sheriffs Department.

## IV. FACTUAL ALLEGATIONS

## A. Background: False Warrant Claims

14. On or about November 27, 2022—approximately one month before the incident at issue in this Complaint—Sergeant Mangra of the Los Angeles County Sheriff's Department, Court Services Division, stationed at the Governor George Deukmejian Courthouse in Long Beach, California, falsely informed Plaintiff that there was a $50,000 warrant for Plaintiff's arrest.

15. Sergeant Mangra told Plaintiff he would take documentation to Ms. White, the head clerk at the courthouse, to process the alleged warrant into the statewide law enforcement system.

16. Plaintiff reasonably believed, based on Sergeant Mangra's representations, that a warrant for his arrest had been or would be entered into law enforcement databases accessible to deputies in the field.

17. In fact, no warrant for Plaintiff's arrest existed at any time relevant to this Complaint. Sergeant Mangra's representations were false.

18. As a result of Sergeant Mangra's false statements, Plaintiff was placed in a state of ongoing fear and anxiety regarding potential arrest throughout late 2022 and beyond.

**B. The December 27, 2022 Traffic Stop**

**1. Initial Approach and Visible Front License Plate**

19. On December 27, 2022, at approximately 9:20 a.m., Plaintiff was driving his 2016 Toyota Mirai, white in color, California license plate 8MAU100, southbound on La Cienega Boulevard in Los Angeles County, California.

20. One day earlier, on December 26, 2022, Plaintiff's father had discovered that the rear license plate had been stolen from Plaintiff's vehicle and reported the theft to the California Department of Motor Vehicles.

21. Plaintiff was unaware the rear plate was missing. The front license plate remained properly affixed to the vehicle and was clearly visible.

22. As Plaintiff drove south on La Cienega Boulevard, Defendants Britto and Garcia were traveling ahead of Plaintiff in a marked Los Angeles County Sheriff's Department SUV (black and white Ford Explorer).

23. Plaintiff was driving behind Defendants' vehicle at a distance of approximately 100 to 200 feet, well within visible range.

24. Plaintiff's front license plate—bearing the same number as the missing rear plate (8MAU100)—was clearly visible to Defendants, particularly to Defendant Garcia, who was seated in the passenger seat and had an unobstructed view of Plaintiff's vehicle approaching from behind.

25. Defendants' vehicle was equipped with an automated license plate reader and mobile data terminal with immediate access to DMV and law enforcement databases.

26. At no time prior to initiating the stop did Defendants run Plaintiff's front license plate number through DMV or law enforcement databases, despite having every opportunity and technological capability to do so.

27. Had Defendants run the front plate, they would have immediately learned that: (a) the vehicle was properly registered to Plaintiff and/or his father; (b) the rear plate had been reported stolen one day earlier; (c) there was no warrant for Plaintiff's arrest; and (d) there was no reasonable basis to suspect Plaintiff of any criminal activity.

28. Plaintiff followed Defendants south on La Cienega Boulevard to the intersection of Imperial Boulevard, near the Interstate 105 Freeway eastbound onramp.

**2. The Violent Felony Stop**

29. As Plaintiff entered the right-turn lane to access the I-105 eastbound onramp at Imperial Boulevard, Defendants abruptly stopped their vehicle and approached Plaintiff's vehicle on foot.

30. Without warning, Defendants began pounding aggressively on Plaintiff's driver-side window.

31. Plaintiff was startled and frightened by the sudden aggressive approach. Fearing for his safety, Plaintiff did not immediately lower his window. Instead, he attempted to activate his cellular phone's video recording function to document the encounter.

32. The location of the stop—at the intersection of Imperial Boulevard and the I-105 Freeway exit—is an extremely dangerous area with heavy commercial truck traffic.

Vehicles exiting the freeway at high speeds frequently come dangerously close to vehicles stopped in the area. Plaintiff was placed in significant physical danger throughout the 40-minute detention that followed.

33. After Plaintiff lowered his window slightly, Defendants ordered him to open his car door and exit the vehicle.

34. Plaintiff, already in fear for his life due to the aggressive nature of the approach and his knowledge of Sergeant Mangra's earlier false warrant claim, hesitated to comply.

35. In fear of being struck by oncoming traffic from the freeway exit, Plaintiff drove his vehicle forward a short distance to a safer location and stopped.

36. Defendants did not rush or run after Plaintiff's vehicle. They returned to their patrol vehicle at a normal walking pace and repositioned behind Plaintiff's stopped vehicle.

37. Defendants then initiated a full felony stop of Plaintiff's vehicle.

38. Both Defendants exited their patrol vehicle with firearms drawn and pointed directly at Plaintiff.

39. The firearms appeared to Plaintiff to be .45 caliber semi-automatic handguns.

40. Both Defendants kept their firearms drawn and pointed at Plaintiff continuously for the entire duration of the stop—over 40 minutes.

**3. False Warrant Claim and Unlawful Commands**

41. Defendant Britto immediately shouted at Plaintiff: "Get out of your car! You have a lawful warrant!"

42. Plaintiff, terrified and confused, asked: "What lawful warrant are you talking about?"

43. Defendant Britto did not answer Plaintiff's question. Instead, he changed his statement to: "That's a lawful order! Get out! Get out!"

44. Plaintiff repeatedly asked Defendants why they were pulling him over, asking this question many times .

45. Defendants initially refused to provide any explanation.

46. Plaintiff, knowing his constitutional rights, began to object vigorously to Defendants' conduct, stating that their actions were wrong, that they lacked reasonable articulable suspicion to justify the stop, and that they were violating his rights.

47. Plaintiff's objections and assertions of his constitutional rights are protected activity under the First Amendment to the United States Constitution.

**4. Continued Threats and Refusal to Investigate**

48. Throughout the encounter, Defendants threatened to forcibly remove Plaintiff from his vehicle if he did not immediately comply with their orders.

49. Plaintiff, in fear for his life and safety, told Defendant Garcia: "I have a front license plate. Why don't you run the front license plate?"

50. Defendant Garcia refused, stating words to the effect of: "It's too late for that" or "We're not going to do that."

51. At no point during the stop did Defendants run Plaintiff's front license plate number, even after Plaintiff explicitly directed their attention to it.

52. This refusal to investigate readily available exculpatory evidence was not mere oversight—it was a deliberate choice to escalate the encounter and continue the detention without legal justification.

53. Defendants kept both of Plaintiff's vehicle doors open throughout the entire 40-minute detention.

**5. Providing Identification and Continued False Claims**

54. Under threat of forcible extraction and in fear for his life, Plaintiff eventually provided Defendants with his California driver's license number verbally: B5848677.

55. Defendant Britto wrote down the number and returned to his patrol vehicle to run Plaintiff's information.

56. After running Plaintiff's information through law enforcement databases, Defendant Britto returned to Plaintiff's vehicle and stated: "You are not Hector Gutierrez. You're not Hector Gutierrez."

57. Plaintiff responded: "Yes, I am Hector Gutierrez."

58. Defendant Britto then attempted to physically remove Plaintiff from the vehicle, reaching into the vehicle and grabbing Plaintiff's arm and wrist.

59. Plaintiff, terrified that he would be forcibly removed and potentially injured or killed, told Defendants he would retrieve his physical driver's license.

60. Exercising extreme caution to avoid giving Defendants any pretext to shoot him, Plaintiff slowly reached into the overhead storage compartment above the rearview mirror and retrieved his California driver's license.

61. Plaintiff handed the physical license to Defendant Britto.

62. Defendant Britto returned to his patrol vehicle to verify the license.

63. After verifying Plaintiff's identity through his physical driver's license and photograph, Defendant Britto returned and again stated: "You are not Hector Gutierrez."

64. This statement was objectively and verifiably false. Defendants had confirmed through two separate checks—the driver's license number and the physical license with photograph—that Plaintiff was indeed Hector Gutierrez, born September 16, 1976.

65. At this point in the encounter, Defendants knew or should have known: (a) Plaintiff was exactly who he claimed to be; (b) there was no warrant for Plaintiff's arrest; (c) the vehicle was properly registered; (d) Plaintiff posed no threat to officer safety; and (e) there was no probable cause or even reasonable suspicion to support continued detention.

66. Nevertheless, Defendants continued to detain Plaintiff at gunpoint.

**6. Unlawful Search of Vehicle**

67. During the detention, Defendants opened both the driver-side and passenger-side doors of Plaintiff's vehicle.

68. Defendant Britto positioned himself inside the door frame of the driver-side door, close enough that his body intruded into the vehicle's interior space.

69. Defendant Garcia positioned himself at the passenger-side door.

70. Both Defendants conducted a visual search of the vehicle's interior, looking into the front seats, center console area, and rear passenger area.

71. Defendant Garcia may have touched or manipulated items in the passenger-side door panel.

72. Defendants did not have a warrant to search Plaintiff's vehicle.

73. Plaintiff did not consent to any search of his vehicle.

74. Defendants did not have probable cause to believe the vehicle contained evidence of a crime, contraband, or weapons.

75. The alleged missing license plate—a minor equipment violation—does not provide probable cause to search the interior of a vehicle.

76. Plaintiff was outside the vehicle during portions of the detention, eliminating any officer safety justification for searching the passenger compartment.

77. The search was conducted without legal justification in violation of the Fourth Amendment.

**7. Attempted Suppression of Constitutional Objections**

78. As Plaintiff continued to object to Defendants' conduct and assert his constitutional rights, Defendant Garcia told Plaintiff to look up certain California Vehicle Code sections on his "cell phone" or "little contraption" to verify that Defendants' actions were lawful.

79. Defendant Garcia made these statements in an attempt to intimidate Plaintiff into silence and to undermine Plaintiff's accurate understanding that Defendants' conduct was unconstitutional.

80. Defendant Garcia told Plaintiff to stop reaching for items in the vehicle.

81. This command, given while Defendants had firearms pointed at Plaintiff, caused Plaintiff extreme fear, as he understood that officers frequently use claims of "reaching" as justification for shooting unarmed individuals.

82. Plaintiff froze in place, terrified that any movement could result in Defendants shooting him.

**8. False Citation and Direction to Wrong Courthouse**

83. After detaining Plaintiff at gunpoint for over 40 minutes, Defendant Britto issued
    Plaintiff a citation: Los Angeles County Sheriff's Department Notice to Appear, Ticket
    Number 1335596.

84. The citation listed the following alleged violations:

    o   California Vehicle Code § 16028(a): No proof of financial responsibility
        (insurance)

    o   California Vehicle Code § 26708(a)(1): Tinted windows

    o   California Vehicle Code § 5200: No license plates (plural)

85. The "no proof of insurance" allegation was false. Plaintiff's vehicle was insured. The
    vehicle's registration was valid and current, which is impossible without proof of
    insurance on file with the DMV. Plaintiff had an insurance card in the vehicle but
    Defendants refused to allow Plaintiff to retrieve it, stating "it's too late for that."

86. The "no license plates" allegation was false and misleading. Only the rear plate was
    missing (due to theft reported the day before). The front plate was present, visible, and
    could have been verified by Defendants at any time. Defendant Britto's use of the plural
    "plates" on the citation falsely suggested both plates were missing.

87. The citation contained numerous deficiencies and omissions, including:

- o   No check box marked for "misdemeanor," "traffic," or "non-traffic"

- o   Station/agency field not filled in

- o   "Evidence of financial responsibility" section not filled in

- o   "Registered owner or lessee address city state" section not filled in

- o   Speed-related fields not filled in

- o   Number of passengers not filled in

- o   Booking number field not filled in

- o   **Most critically: The "when on or before this date/time" field—directing when and where Plaintiff must appear—was completely blank**

88. Despite the blank appearance date field, Defendant Britto verbally directed Plaintiff to appear at **Airport Courthouse** to address the citation.

89. Defendants knew, or should have known, that Airport Courthouse does not have jurisdiction over or handle traffic matters.

90. Airport Courthouse handles only criminal matters, not infractions or traffic citations.

91. Defendants' direction to Plaintiff to appear at Airport Courthouse was either: (a) an intentional effort to deprive Plaintiff of his right to due process by directing him to a forum without jurisdiction, thereby ensuring he could not properly defend against the charges; or (b) grossly negligent and reckless conduct demonstrating deliberate indifference to Plaintiff's constitutional rights.

92. The citation listed the location of the violation as "Imperial Avenue and Douglas Street."

93. This location was false. The actual location was Imperial Boulevard at the Interstate 105 Freeway eastbound exit/onramp.

**9. Emotional and Psychological Harm**

94. Throughout the entire 40-minute encounter, Plaintiff feared he would be killed by Defendants.

95. Plaintiff believed that any wrong move, any statement Defendants perceived as disrespectful, or any sudden movement could result in Defendants shooting him.

96. Plaintiff's fear was objectively reasonable given: (a) Defendants' aggressive initiation of the stop; (b) Defendants' false claim of a warrant; (c) both Defendants pointing loaded

firearms at Plaintiff continuously for 40 minutes; (d) Defendant Britto's physical grabbing of Plaintiff; (e) Defendant Garcia's command to "stop reaching"; and (f) Plaintiff's knowledge of numerous incidents of unarmed individuals being shot and killed by police under similar circumstances.

97. Plaintiff suffered severe emotional distress, terror, humiliation, and psychological trauma during and as a direct result of this encounter.

## C. The Malicious Prosecution

### 1. Plaintiff's Attempts to Resolve the Citation

98. Following the December 27, 2022 stop, Plaintiff attempted to comply with Defendants' directive to appear at Airport Courthouse.

99. Over the course of the following months and years, Plaintiff appeared at Airport Courthouse multiple times attempting to resolve the citation.

100.        Each time Plaintiff appeared at Airport Courthouse, court personnel informed him: "We don't handle traffic matters. We don't handle civil matters. We only handle criminal matters."

101.    Court personnel searched for Plaintiff's citation in the court system using the ticket number and Plaintiff's information.

102.    The citation was never found in the Airport Courthouse system or any courthouse system the clerks could access.

103.    Despite these repeated failures to locate the citation in any court system, the citation remained outstanding, and Plaintiff remained subject to potential arrest for failure to appear.

104.    Plaintiff suffered ongoing anxiety, stress, and fear of arrest for nearly two years as a result of the unresolved citation and the inability to address it in any court.

**2. Favorable Termination**

105.    By operation of law, the citation expired on December 27, 2024—exactly two years after issuance.

106.    Under California law, a citation that is not processed, filed, or prosecuted within the statutory timeframe is deemed dismissed.

107.     The expiration and dismissal of the citation constituted a favorable termination of the prosecution for purposes of Plaintiff's malicious prosecution claim under the Fourth Amendment.

108.     Plaintiff did not plead guilty, was not convicted, and the charges were not sustained in any manner.

**D. Discovery of Fabricated Warrant Claim**

109.     On or about January 5, 2025, Plaintiff was involved in a separate interaction with the Inglewood Police Department.

110.     During that interaction, an Inglewood Police Department officer (Officer Nasser) informed Plaintiff that there was a $50,000 warrant for Plaintiff's arrest.

111.     This claim was strikingly similar to the false warrant claims made by Sergeant Mangra in November 2022 and Defendant Britto on December 27, 2022.

112.     Alarmed by this repeated false claim, Plaintiff conducted an exhaustive investigation to determine whether any warrant actually existed.

113.     Plaintiff personally appeared at and/or contacted: (a) the Inglewood Police Department; (b) all courthouses in Los Angeles County; (c) courthouses in Riverside

County; (d) courthouses in Ventura County; (e) courthouses in San Diego County; and (f) the Los Angeles County Sheriff's Department.

114.    Plaintiff obtained computer printouts from the Inglewood Police Department records division confirming no warrant existed for Plaintiff's arrest in any California jurisdiction.

115.    Plaintiff's investigation definitively established that no warrant for his arrest existed on December 27, 2022, or at any other time relevant to this action.

116.    Defendant Britto's claim that Plaintiff had a "lawful warrant" on December 27, 2022 was objectively and verifiably false.

117.    Defendant Britto either: (a) knowingly fabricated the existence of a warrant; (b) recklessly claimed a warrant existed without checking; or (c) relied on false information from Sergeant Mangra without conducting any independent verification.

118.    Under any of these scenarios, Defendant Britto violated Plaintiff's clearly established constitutional rights.

# V. CAUSES OF ACTION

## COUNT ONE: MALICIOUS PROSECUTION

## (42 U.S.C. § 1983 - Fourth Amendment) Against Defendants Britto and Garcia

119.    Plaintiff incorporates by reference all prior allegations as if fully set forth herein.

120.    The Fourth Amendment to the United States Constitution protects individuals against prosecution without probable cause.

121.    To establish a claim for malicious prosecution under § 1983, Plaintiff must prove: (a) Defendants initiated or continued a criminal proceeding against Plaintiff; (b) the proceeding was initiated or continued without probable cause; (c) the proceeding was initiated or continued with malice; (d) the proceeding terminated in Plaintiff's favor; and (e) Plaintiff suffered a deprivation of liberty as a result.

122.    Defendants initiated a criminal proceeding against Plaintiff by issuing Citation No. 1335596 on December 27, 2022, charging Plaintiff with violations of California Vehicle Code §§ 16028(a), 26708(a)(1), and 5200.

123.    The criminal proceeding was initiated and continued without probable cause.

124.    Defendants had no probable cause to believe Plaintiff violated Vehicle Code § 16028(a) (no proof of insurance) because: (a) Plaintiff's vehicle had valid registration,

which requires proof of insurance on file with DMV; (b) Defendants refused to allow
Plaintiff to produce his insurance card; and (c) Defendants knew or should have known
that a valid registration necessarily means valid insurance.

125.     Defendants had no probable cause to believe Plaintiff violated Vehicle Code §
5200 (no license plates) because: (a) the front license plate was present, visible, and
available for verification throughout the encounter; (b) Defendants deliberately refused to
run the front plate number; (c) had Defendants run the front plate, they would have
learned the rear plate was reported stolen and the vehicle was properly registered; and (d)
a missing rear plate alone—particularly when reported stolen—does not constitute a
violation justifying the charges brought against Plaintiff.

126.     Most critically, Defendants verified Plaintiff's identity through multiple checks
and confirmed he was exactly who he claimed to be (Hector Gutierrez), yet continued to
falsely claim he was not Hector Gutierrez and proceeded with the prosecution based on
this knowingly false premise.

127.     Defendants knew there was no warrant for Plaintiff's arrest, yet used the false
warrant claim as a pretext to initiate and justify the charges.

128.     The proceeding was initiated with malice, as evidenced by: (a) Defendant Britto's
false statement that Plaintiff had a warrant; (b) Defendants' continued false statements

that Plaintiff was not Hector Gutierrez even after verification; (c) Defendants' deliberate refusal to run the front license plate that would have immediately exonerated Plaintiff; (d) Defendants' direction of Plaintiff to Airport Courthouse, which has no jurisdiction over traffic matters; (e) the numerous deficiencies and false statements in the citation itself; and (f) Defendants' retaliatory animus toward Plaintiff for asserting his constitutional rights during the stop.

129.     The proceeding terminated in Plaintiff's favor when the citation expired by operation of law on December 27, 2024, without any conviction, guilty plea, or finding against Plaintiff.

130.     Under *Thompson v. Clark*, 142 S. Ct. 1332 (2022), a favorable termination is one that is not inconsistent with innocence, including dismissal or expiration of charges. The expiration of Plaintiff's citation constitutes a favorable termination.

131.     Plaintiff suffered a deprivation of liberty as a result of the malicious prosecution, including: (a) the initial 40-minute detention at gunpoint; (b) ongoing fear of arrest for nearly two years; (c) multiple trips to Airport Courthouse attempting to resolve the citation; (d) inability to resolve the citation due to Defendants' false court direction; (e) severe emotional distress and anxiety; and (f) damage to his reputation and sense of security.

132.     Under *McDonough v. Smith*, 139 S. Ct. 2149 (2019), a Fourth Amendment malicious prosecution claim accrues when the prosecution terminates in the plaintiff's favor. Plaintiff's claim accrued on December 27, 2024, and this action was filed within the applicable two-year statute of limitations.

133.     As a direct and proximate result of Defendants' malicious prosecution, Plaintiff has suffered and continues to suffer damages including emotional distress, mental anguish, anxiety, humiliation, loss of liberty, lost time, and other compensable harm.

134.     Defendants acted with reckless disregard for Plaintiff's clearly established constitutional rights and with malice toward Plaintiff, warranting an award of punitive damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendants Britto and Garcia on Count One and award compensatory damages, punitive damages, costs, attorney's fees, and such other relief as the Court deems just and proper.

## COUNT TWO: EXCESSIVE FORCE - UNJUSTIFIED FELONY STOP (42 U.S.C. § 1983 - Fourth Amendment) Against Defendants Britto and Garcia

135.     Plaintiff incorporates by reference all prior allegations as if fully set forth herein.

136.     The Fourth Amendment prohibits law enforcement officers from using excessive force during a seizure.

137.     Under *Graham v. Connor*, 490 U.S. 386 (1989), the reasonableness of force is evaluated from the perspective of a reasonable officer on the scene, considering the totality of circumstances, including: (a) the severity of the crime at issue; (b) whether the suspect poses an immediate threat to the safety of officers or others; and (c) whether the suspect is actively resisting arrest or attempting to evade arrest by flight.

138.     Pointing a firearm at an individual constitutes a significant use of force. *Robinson v. Solano County*, 278 F.3d 1007, 1014 (9th Cir. 2002).

139.     A "felony stop" or "high-risk stop"—in which officers draw firearms and issue commands at gunpoint—is justified only when officers have reasonable suspicion that the vehicle's occupants are armed and dangerous or have committed a serious crime.

140.     In *Chinaryan v. City of Los Angeles*, 2024 WL 3259533 (9th Cir. July 2, 2024), the Ninth Circuit held that reasonable suspicion that a vehicle is stolen, standing alone, is insufficient to justify a high-risk felony stop unless officers have articulable facts suggesting the occupants are armed and dangerous.

141.     On December 27, 2022, Defendants conducted a felony stop of Plaintiff, including: (a) drawing firearms; (b) pointing firearms at Plaintiff; (c) maintaining

firearms pointed at Plaintiff for over 40 minutes; (d) shouting commands; (e) threatening

to forcibly remove Plaintiff from the vehicle; and (f) physically grabbing Plaintiff.

142.     Defendants had no reasonable suspicion that Plaintiff was armed or dangerous.

143.     Defendants had no reasonable suspicion that Plaintiff had committed any violent

felony or serious crime.

144.     The only potential basis for the stop was a missing rear license plate—at most, a

minor traffic infraction.

145.     Even if Defendants suspected the vehicle was stolen (which they did not

articulate), that suspicion alone would not justify the use of force employed. *Chinaryan*,

2024 WL 3259533.

146.     Moreover, Defendants could have immediately dispelled any suspicion by

running Plaintiff's visible front license plate, which would have shown: (a) the vehicle

was properly registered; (b) the rear plate had been reported stolen; and (c) there was no

indication of criminal activity.

147.     Defendants' deliberate refusal to investigate this readily available information

before escalating to a felony stop demonstrates that their use of force was objectively

unreasonable.

148.    The following facts establish that no reasonable officer could have believed the felony stop was justified: - The suspected violation (missing plate) was a minor equipment issue, not a violent crime. - Plaintiff was driving normally and lawfully; he was not fleeing or evading. - Plaintiff was cooperative; he did not resist or make threatening movements. - Plaintiff posed no threat to officer safety. - There were two officers and one civilian, eliminating any numerical disadvantage. - The stop occurred in daylight in a public area. - Defendants had immediate access to information (the front plate) that would have resolved any concern. - Plaintiff explicitly directed Defendants' attention to the front plate, yet they refused to investigate.

149.    Maintaining firearms pointed at Plaintiff for over 40 minutes, long after any initial officer safety concerns could reasonably persist, was grossly excessive.

150.    The force used was objectively unreasonable under the totality of circumstances and violated Plaintiff's Fourth Amendment right to be free from excessive force.

151.    As a direct and proximate result of Defendants' use of excessive force, Plaintiff suffered severe emotional distress, fear of imminent death or serious injury, psychological trauma, humiliation, and ongoing mental anguish.

152.        Defendants' conduct was objectively unreasonable, and no reasonable officer

could have believed their use of force was lawful under clearly established constitutional

standards.

153.        Defendants are not entitled to qualified immunity.

154.        Defendants acted with reckless disregard for Plaintiff's clearly established

constitutional rights and with malice, warranting an award of punitive damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor

against Defendants Britto and Garcia on Count Two and award compensatory damages, punitive

damages, costs, attorney's fees, and such other relief as the Court deems just and proper.

## COUNT THREE: FABRICATION OF EVIDENCE / FALSE STATEMENTS

## (42 U.S.C. § 1983 - Fourteenth Amendment Due Process) Against Defendant

## Britto

155.        Plaintiff incorporates by reference all prior allegations as if fully set forth herein.

156.    The Due Process Clause of the Fourteenth Amendment prohibits law enforcement officers from fabricating evidence or making false statements that are forwarded to prosecutors and used to deprive an individual of liberty.

157.    Under *McDonough v. Smith*, 139 S. Ct. 2149 (2019), a fabrication of evidence claim accrues when the criminal proceedings terminate in the defendant's favor.

158.    Defendant Britto fabricated evidence and made knowingly or recklessly false statements, including:

**a. False Warrant Claim:** Defendant Britto stated that Plaintiff had a "lawful warrant" for his arrest. This statement was objectively false. No warrant for Plaintiff's arrest existed on December 27, 2022, or at any other time. Britto either knew this statement was false or made it with reckless disregard for the truth.

**b. False Identity Claims:** Defendant Britto repeatedly stated "You are not Hector Gutierrez" after verifying Plaintiff's identity through: (i) California driver's license number B5848677, and (ii) physical California driver's license with Plaintiff's photograph and information. These statements were objectively and verifiably false. Britto knew Plaintiff was Hector Gutierrez but falsely claimed otherwise.

**c. False Citation Information:** Defendant Britto issued a citation containing multiple false statements:

- Claiming Plaintiff had "no proof of insurance" when Plaintiff's vehicle was validly registered (requiring insurance) and Britto refused to allow Plaintiff to produce his insurance card.

- Claiming "no license plates" (plural) when only the rear plate was missing (due to theft) and the front plate was present and visible.

- Listing the wrong location for the violation (Imperial Avenue and Douglas Street instead of Imperial Boulevard at the I-105 Freeway exit).

159.    Defendant Britto knew these statements were false at the time he made them, or acted with reckless disregard for their truth or falsity.

160.    Defendant Britto forwarded these false statements to the criminal justice system by: (a) including them in the citation/complaint; (b) memorializing them in police reports; and/or (c) communicating them to prosecutors, courts, or other law enforcement personnel.

161.    These fabricated statements were used to deprive Plaintiff of his liberty by subjecting him to criminal prosecution for nearly two years.

162.    Plaintiff was harmed by the fabricated evidence and false statements, suffering: (a) deprivation of liberty; (b) ongoing fear of arrest; (c) emotional distress; (d) damage to reputation; (e) inability to resolve the false charges; and (f) psychological trauma.

163.    Under *McDonough v. Smith*, this claim accrued when the prosecution terminated in Plaintiff's favor on December 27, 2024. This action was filed within the applicable statute of limitations.

164.    Defendant Britto's fabrication of evidence and false statements violated Plaintiff's clearly established due process rights under the Fourteenth Amendment.

165.    Defendant Britto is not entitled to qualified immunity.

166.    Defendant Britto acted with malice and reckless disregard for Plaintiff's constitutional rights, warranting an award of punitive damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant Britto on Count Three and award compensatory damages, punitive damages, costs, attorney's fees, and such other relief as the Court deems just and proper.

**COUNT FOUR: UNLAWFUL PROLONGED DETENTION (42 U.S.C. § 1983 -**

**Fourth Amendment) Against Defendants Britto and Garcia**

167.      Plaintiff incorporates by reference all prior allegations as if fully set forth herein.

168.      The Fourth Amendment prohibits unreasonable seizures, including traffic stops
that are prolonged beyond the time reasonably necessary to complete the mission of the
stop.

169.      In *Rodriguez v. United States*, 575 U.S. 348 (2015), the Supreme Court held that a
traffic stop may last no longer than necessary to complete the mission of issuing a ticket
for the violation, which includes checking the driver's license, determining whether there
are outstanding warrants, and inspecting the vehicle's registration and proof of insurance.

170.      A traffic stop becomes unlawful when it is prolonged beyond the time reasonably
necessary to complete these tasks, unless officers develop reasonable suspicion of
additional criminal activity.

171.      On December 27, 2022, Defendants detained Plaintiff for over 40 minutes.

172.      The reasonable time necessary to complete the mission of a traffic stop for a
missing license plate is approximately 10-15 minutes, including: (a) 2-3 minutes to check

driver's license; (b) 5-7 minutes to run information through law enforcement databases; (c) 3-5 minutes to issue a citation.

173.    Defendants exceeded this reasonable timeframe by more than 25 minutes.

174.    Defendants had no reasonable suspicion of any criminal activity beyond the alleged missing plate.

175.    Defendants' own conduct demonstrates they had no legitimate law enforcement purpose for the prolonged detention: - Defendants verified Plaintiff's identity within the first 10-15 minutes. - Defendants confirmed there was no warrant for Plaintiff's arrest. - Defendants had no basis to believe Plaintiff posed a threat. - Defendants refused to investigate the front license plate that would have resolved all concerns immediately.

176.    The prolonged detention was not justified by any reasonable law enforcement purpose. Instead, it was used to: (a) retaliate against Plaintiff for asserting his rights; (b) intimidate Plaintiff; (c) conduct an unlawful search of the vehicle; and/or (d) harass Plaintiff.

177.    The 40-minute detention at gunpoint violated *Rodriguez* and Plaintiff's Fourth Amendment rights.

178.     This claim is part of the continuous course of conduct that culminated in malicious prosecution and did not fully accrue until the prosecution terminated favorably on December 27, 2024.

179.     As a direct and proximate result of the unlawful prolonged detention, Plaintiff suffered severe emotional distress, fear, humiliation, loss of liberty, and psychological trauma.

180.     Defendants acted with deliberate indifference to Plaintiff's clearly established constitutional rights, warranting an award of punitive damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendants Britto and Garcia on Count Four and award compensatory damages, punitive damages, costs, attorney's fees, and such other relief as the Court deems just and proper.

## COUNT FIVE: FAILURE TO INVESTIGATE / RECKLESS DISREGARD FOR CONSTITUTIONAL RIGHTS (42 U.S.C. § 1983 - Fourth Amendment) Against Defendants Britto and Garcia

181.     Plaintiff incorporates by reference all prior allegations as if fully set forth herein.

182.     Law enforcement officers have a constitutional duty to investigate readily available exculpatory evidence before escalating to the use of force or initiating a prosecution.

183.     Reckless or deliberate failure to investigate exculpatory evidence that is immediately available constitutes reckless disregard for an individual's constitutional rights and can defeat qualified immunity.

184.     On December 27, 2022, Defendants had immediate and effortless access to exculpatory information: Plaintiff's front license plate number.

185.     Running a license plate through DMV and law enforcement databases takes approximately 30-60 seconds using the mobile data terminal in Defendants' patrol vehicle.

186.     Had Defendants run the front plate at any point before, during, or immediately after initiating the stop, they would have learned: - The vehicle was properly registered to Plaintiff and/or Plaintiff's father. - The rear license plate had been reported stolen one day earlier (December 26, 2022). - There was no indication the vehicle was being used in criminal activity. - There was no warrant for Plaintiff's arrest. - Plaintiff posed no threat to officer safety.

187.     This information would have immediately dispelled any reasonable suspicion and
eliminated any justification for: - The felony stop with firearms drawn - The 40-minute
detention - The false statements about Plaintiff's identity - The citation for missing plates
- The malicious prosecution

188.     Despite having this information readily available, Defendants deliberately chose
NOT to investigate.

189.     Plaintiff explicitly directed Defendants' attention to the front license plate, stating:
"I have a front license plate. Why don't you run the front license plate?"

190.     Defendant Garcia refused, stating words to the effect that it was "too late for that"
or that they would not do so.

191.     This refusal was not a mere oversight or mistake. It was a deliberate decision to
proceed with constitutional violations despite having immediate access to information
that would prevent those violations.

192.     Defendants' failure to investigate demonstrates: - Reckless disregard for Plaintiff's
Fourth Amendment rights - Deliberate indifference to readily available exculpatory
evidence - Intent to proceed with the detention, search, and prosecution regardless of
whether there was legal justification - Retaliatory animus toward Plaintiff for asserting
his constitutional rights

193.    No reasonable officer would conduct a felony stop, detain an individual at
gunpoint for 40 minutes, and initiate a prosecution when a simple 30-second database
check would resolve all questions.

194.    Defendants' conduct falls far below the standard of reasonable law enforcement
practice and violates clearly established Fourth Amendment principles.

195.    As a direct and proximate result of Defendants' failure to investigate, Plaintiff
suffered all the harms alleged herein, including the felony stop, prolonged detention,
unlawful search, malicious prosecution, and associated emotional and psychological
trauma.

196.    Defendants acted with reckless disregard for and deliberate indifference to
Plaintiff's clearly established constitutional rights, warranting an award of punitive
damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor
against Defendants Britto and Garcia on Count Five and award compensatory damages, punitive
damages, costs, attorney's fees, and such other relief as the Court deems just and proper.

**COUNT SIX: UNLAWFUL SEARCH (42 U.S.C. § 1983 - Fourth Amendment) Against Defendants Britto and Garcia**

197.        Plaintiff incorporates by reference all prior allegations as if fully set forth herein.

198.        The Fourth Amendment protects individuals against unreasonable searches and seizures.

199.        Law enforcement officers may not search a vehicle without: (a) a valid search warrant; (b) voluntary consent; (c) probable cause to believe the vehicle contains evidence of a crime, contraband, or weapons; or (d) exigent circumstances.

200.        On December 27, 2022, Defendants opened both doors of Plaintiff's vehicle and conducted a visual search of the interior, including the front seats, center console, and rear passenger area.

201.        Defendants did not have a warrant to search Plaintiff's vehicle.

202.        Plaintiff did not consent to the search. To the contrary, Plaintiff was objecting to Defendants' conduct throughout the encounter.

203.        Defendants did not have probable cause to believe Plaintiff's vehicle contained evidence of a crime, contraband, or weapons.

204.    A missing license plate—the sole articulated basis for the stop—does not provide probable cause to search the interior of a vehicle.

205.    Defendants had no information suggesting Plaintiff was armed or that the vehicle contained weapons.

206.    Defendants had verified Plaintiff's identity and confirmed there was no warrant, eliminating any basis for believing evidence of criminality would be found in the vehicle.

207.    There were no exigent circumstances justifying the search. Plaintiff was outside the vehicle for portions of the detention, eliminating any officer safety justification for searching the passenger compartment under *Michigan v. Long*, 463 U.S. 1032 (1983).

208.    The search was conducted without legal justification and violated Plaintiff's Fourth Amendment rights.

209.    This claim is intertwined with the malicious prosecution, as the search was conducted to gather evidence to support the baseless charges. Accordingly, this claim did not fully accrue until the prosecution terminated favorably on December 27, 2024.

210.    As a direct and proximate result of the unlawful search, Plaintiff suffered emotional distress, invasion of privacy, and violation of his sense of security and dignity.

211.     Defendants acted with reckless disregard for Plaintiff's clearly established constitutional rights, warranting an award of punitive damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendants Britto and Garcia on Count Six and award compensatory damages, punitive damages, costs, attorney's fees, and such other relief as the Court deems just and proper.

## COUNT SEVEN: FIRST AMENDMENT RETALIATION (42 U.S.C. § 1983 – First Amendment) Against Defendants Britto and Garcia

212.     Plaintiff incorporates by reference all prior allegations as if fully set forth herein.

213.     The First Amendment protects the right to criticize police conduct, question the legality of police actions, and assert one's constitutional rights.

214.     Law enforcement officers violate the First Amendment when they retaliate against individuals for engaging in protected speech.

215.     To establish a First Amendment retaliation claim, Plaintiff must show: (a) he engaged in constitutionally protected activity; (b) Defendants took adverse action against him; (c) there is a causal connection between the protected activity and the adverse

action; (d) the adverse action would chill a person of ordinary firmness from continuing to engage in the protected activity; and (e) Defendants lacked probable cause for the adverse action.

216.     Plaintiff engaged in constitutionally protected activity by: - Questioning the legal basis for the stop ("Why are you pulling me over?") - Objecting vigorously to Defendants' conduct - Asserting that Defendants lacked reasonable articulable suspicion - Stating that Defendants' actions were "wrong," "bullshit," and unconstitutional - Directing Defendants to investigate the front license plate - Asserting his knowledge of his constitutional rights

217.     All of these statements and actions are protected by the First Amendment. Citizens have a constitutional right to criticize, question, and object to police conduct, even in heated or profane terms.

218.     Defendants took adverse actions against Plaintiff, including: - Continuing the detention at gunpoint for 40 minutes after verifying his identity and finding no warrant - Falsely claiming Plaintiff was not Hector Gutierrez even after verification (in retaliation for Plaintiff's challenges to their authority) - Physically grabbing Plaintiff after he refused to stop asserting his rights - Issuing a citation with false charges - Directing Plaintiff to the wrong courthouse to ensure he could not properly defend himself - Pursuing a malicious prosecution for nearly two years

219.     There is a clear causal connection between Plaintiff's protected speech and Defendants' adverse actions. The timeline demonstrates that Defendants escalated their conduct and made false statements after and in response to Plaintiff's objections and assertions of rights.

220.     Defendant Garcia explicitly attempted to suppress Plaintiff's speech by telling him to look up vehicle codes on his phone to prove Defendants were acting lawfully—a clear attempt to silence Plaintiff's objections.

221.     Defendants' actions would chill a person of ordinary firmness from continuing to exercise their First Amendment rights. Detention at gunpoint for 40 minutes, false charges, and malicious prosecution are quintessential examples of conduct that would deter individuals from speaking out against police misconduct.

222.     Defendants lacked probable cause for their adverse actions, as alleged throughout this Complaint.

223.     The retaliatory nature of Defendants' conduct is further evidenced by their direction of Plaintiff to Airport Courthouse—a court without jurisdiction—which served no legitimate law enforcement purpose but was designed to punish and harass Plaintiff for challenging their authority.

224.     This retaliatory conduct continued through the malicious prosecution and did not
cease until the citation expired on December 27, 2024.

225.     As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff
suffered emotional distress, humiliation, deprivation of liberty, chilling of his free speech
rights, and psychological trauma.

226.     Defendants' retaliatory conduct violated Plaintiff's clearly established First
Amendment rights.

227.     Defendants acted with malice and in deliberate retaliation against Plaintiff for
exercising his constitutional rights, warranting an award of punitive damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor
against Defendants Britto and Garcia on Count Seven and award compensatory damages,
punitive damages, costs, attorney's fees, and such other relief as the Court deems just and proper.

## COUNT EIGHT: FAILURE TO INTERVENE (42 U.S.C. § 1983 - Fourth Amendment) Against Defendant Garcia

228.     Plaintiff incorporates by reference all prior allegations as if fully set forth herein.

229.     Under clearly established Ninth Circuit law, a law enforcement officer who observes a fellow officer violating an individual's constitutional rights has a duty to intervene if the observing officer has a realistic opportunity to do so. *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000).

230.     An officer who fails to intervene is liable under § 1983 for the constitutional violations committed by the other officer(s).

231.     Defendant Garcia was present during the entire December 27, 2022 incident and observed all constitutional violations committed by Defendant Britto, including: - The unjustified felony stop with firearms drawn - The false claim that Plaintiff had a warrant - The false claims that Plaintiff was not Hector Gutierrez - The 40-minute detention without legal justification - The unlawful search of the vehicle - The physical grabbing of Plaintiff - The issuance of a citation containing false statements - The direction to the wrong courthouse

232.     Defendant Garcia also personally participated in many of these violations, including drawing his firearm on Plaintiff, refusing to run the front license plate, and conducting a visual search of the vehicle.

233.     Defendant Garcia had multiple realistic opportunities to intervene and prevent or stop the constitutional violations:

**a. Before the Stop:** Garcia was seated in the passenger seat and had a clear view of Plaintiff's front license plate as Plaintiff drove behind their vehicle. Garcia could have run the plate before Britto initiated the stop, which would have prevented all subsequent violations.

**b. During Initial Approach:** When Britto began pounding on Plaintiff's window and making aggressive demands, Garcia could have suggested de-escalation or running the front plate to verify registration.

**c. When False Warrant Claimed:** When Britto claimed Plaintiff had a "lawful warrant," Garcia had access to the same computer systems and could have verified (or known from checking earlier) that no warrant existed. Garcia could have corrected Britto's false statement.

**d. When Plaintiff Directed Attention to Front Plate:** When Plaintiff explicitly told Garcia "I have a front license plate. Why don't you run the front license plate?", Garcia had a perfect opportunity to do so. This simple act would have resolved all issues and ended the constitutional violations. Instead, Garcia refused.

**e. After Identity Verification:** When Britto returned from running Plaintiff's information and falsely claimed Plaintiff was not Hector Gutierrez, Garcia knew or should have known this was false (both officers had access to the verification results). Garcia could have corrected Britto or insisted the detention end.

**f. During 40-Minute Detention:** Throughout the excessive 40-minute detention, Garcia had continuous opportunity to tell Britto to end the stop, to run the front plate himself, or to take any action to stop the ongoing constitutional violations.

**g. During Citation Issuance:** When Britto prepared to issue a citation containing false statements and directing Plaintiff to the wrong courthouse, Garcia could have intervened to correct the false information or ensure proper court direction.

234.    Despite these numerous opportunities, Defendant Garcia failed to take any action to intervene, stop, or prevent the constitutional violations.

235.    Defendant Garcia's failure to intervene was not a mere passive observation. Garcia actively participated in the violations by refusing to run the front plate when explicitly asked, by drawing his weapon on Plaintiff, and by conducting a search of the vehicle.

236.    Under the "integral participant" doctrine, Garcia is liable not only for his failure to intervene but also as a direct participant in the constitutional violations.

237.    There is no legitimate law enforcement justification for Garcia's failure to run the front license plate—an action that would have taken 30 seconds and prevented all subsequent harm to Plaintiff.

238.     Garcia's failure to intervene enabled and prolonged Defendant Britto's constitutional violations and the malicious prosecution that followed.

239.     As a direct and proximate result of Defendant Garcia's failure to intervene, Plaintiff suffered all the harms alleged throughout this Complaint.

240.     Defendant Garcia's duty to intervene was clearly established under Ninth Circuit law at the time of the incident.

241.     Defendant Garcia is not entitled to qualified immunity.

242.     Defendant Garcia acted with deliberate indifference to Plaintiff's clearly established constitutional rights, warranting an award of punitive damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant Garcia on Count Eight and award compensatory damages, punitive damages, costs, attorney's fees, and such other relief as the Court deems just and proper.

**COUNT NINE: DENIAL OF DUE PROCESS - WRONG VENUE/FORUM (42 U.S.C. § 1983 - Fourteenth Amendment) Against Defendants Britto and Garcia**

243.     Plaintiff incorporates by reference all prior allegations as if fully set forth herein.

244.     The Due Process Clause of the Fourteenth Amendment guarantees individuals the right to notice and an opportunity to be heard in a meaningful manner before being deprived of life, liberty, or property.

245.     Fundamental to due process is the requirement that an individual be directed to the proper court or forum with jurisdiction to hear their case.

246.     On December 27, 2022, Defendant Britto issued Citation No. 1335596 to Plaintiff for alleged traffic infractions.

247.     Defendant Britto verbally directed Plaintiff to appear at Airport Courthouse to address the citation.

248.     Airport Courthouse does not have jurisdiction over traffic infractions. Airport Courthouse handles only criminal matters, not civil infractions or traffic violations.

249.     Defendants knew, or should have known, that Airport Courthouse does not handle traffic matters.

250.     By directing Plaintiff to a court without jurisdiction over the charges, Defendants deprived Plaintiff of his right to due process in multiple ways:

**a. No Proper Notice:** Plaintiff was not given proper notice of where to appear to defend against the charges.

**b. No Meaningful Opportunity to be Heard:** Because Airport Courthouse lacked jurisdiction, Plaintiff could not present a defense, contest the charges, or have the matter adjudicated.

**c. Constructive Denial of Forum:** The direction to the wrong court effectively denied Plaintiff any forum in which to defend himself.

**d. Ongoing Jeopardy:** Because Plaintiff could not resolve the citation in the proper forum, he remained subject to potential arrest for failure to appear for nearly two years, despite his good-faith efforts to comply.

251.     Plaintiff made multiple trips to Airport Courthouse attempting to resolve the citation, each time being told the court had no jurisdiction over traffic matters and could not locate the citation in any system.

252.     Defendants' direction to the wrong courthouse was either: (a) an intentional effort to deny Plaintiff due process as retaliation for asserting his rights; or (b) grossly negligent and reckless conduct demonstrating deliberate indifference to Plaintiff's constitutional rights.

253.     Given the totality of circumstances—including the false statements, false charges, and retaliatory animus demonstrated throughout the encounter—the direction to the wrong courthouse was more likely intentional than negligent.

254.     This denial of due process was part of the malicious prosecution and continued until the citation expired on December 27, 2024.

255.     As a direct and proximate result of Defendants' denial of due process, Plaintiff suffered: (a) inability to defend against false charges; (b) ongoing fear of arrest; (c) wasted time and effort attempting to appear at the wrong court; (d) emotional distress and anxiety; and (e) deprivation of liberty.

256.     Defendants' conduct violated Plaintiff's clearly established due process rights under the Fourteenth Amendment.

257.     Defendants acted with deliberate indifference and/or malice toward Plaintiff's constitutional rights, warranting an award of punitive damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendants Britto and Garcia on Count Nine and award compensatory damages, punitive damages, costs, attorney's fees, and such other relief as the Court deems just and proper.

## COUNT TEN: CONSPIRACY TO VIOLATE CIVIL RIGHTS (42 U.S.C. § 1985(3)) Against Defendants Britto and Garcia

258.     Plaintiff incorporates by reference all prior allegations as if fully set forth herein.

259.     Section 1985(3) provides a cause of action when two or more persons conspire to deprive any person of equal protection of the laws or equal privileges and immunities under the laws.

260.     Defendants Britto and Garcia acted in concert and reached an understanding to violate Plaintiff's constitutional rights.

261.     The conspiracy is evidenced by: - Both Defendants jointly conducting the unjustified felony stop - Both Defendants maintaining firearms pointed at Plaintiff for 40 minutes - Both Defendants refusing to investigate the front license plate despite its availability and Plaintiff's explicit request - Both Defendants participating in the unlawful search of the vehicle - Both Defendants coordinating their false statements and pretextual justifications - Defendant Garcia's refusal to intervene in or stop Defendant Britto's constitutional violations, demonstrating agreement with those violations - Both Defendants' coordination in pursuing the malicious prosecution

262.     The agreement between Defendants Britto and Garcia had as its object the deprivation of Plaintiff's constitutional rights, including his rights under the Fourth Amendment (to be free from unreasonable seizure, excessive force, and unlawful search), First Amendment (to be free from retaliation for protected speech), and Fourteenth Amendment (to due process and freedom from fabricated evidence).

263.     Defendants acted with the intent to deprive Plaintiff of equal protection of the laws.

264.     Defendants committed overt acts in furtherance of the conspiracy, including all the acts alleged throughout this Complaint.

265.     As a direct and proximate result of the conspiracy, Plaintiff suffered deprivation of his constitutional rights and all damages alleged herein.

266.     Defendants acted with malice and in deliberate violation of Plaintiff's rights, warranting an award of punitive damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendants Britto and Garcia on Count Ten and award compensatory damages, punitive damages, costs, attorney's fees, and such other relief as the Court deems just and proper.

## COUNT ELEVEN: MUNICIPAL LIABILITY - MONELL CLAIM (42 U.S.C. § 1983) Against Defendant County of Los Angeles

267.      Plaintiff incorporates by reference all prior allegations as if fully set forth herein.

268.      Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality may be held liable under § 1983 when a constitutional violation results from: (a) an official policy; (b) a widespread custom or practice; (c) a failure to train, supervise, or discipline; or (d) ratification of unconstitutional conduct by a final policymaker.

269.      Defendant County of Los Angeles operates, controls, and maintains the Los Angeles County Sheriff's Department and employs Defendants Britto and Garcia.

270.      The constitutional violations committed by Defendants Britto and Garcia were not isolated incidents but rather the result of systemic failures by the County of Los Angeles, including:

**A. Failure to Train**

271.      The County of Los Angeles failed to adequately train its deputies regarding: - The constitutional limits on conducting felony stops or high-risk stops - The requirement under *Chinaryan v. City of Los Angeles* and Ninth Circuit precedent that reasonable

suspicion of a stolen vehicle alone does not justify a felony stop absent articulable facts

suggesting occupants are armed and dangerous - The duty to investigate readily available

exculpatory evidence before escalating to the use of force - Fourth Amendment

requirements for reasonable detention duration - Fourth Amendment prohibitions on

unlawful searches - First Amendment protections for citizens who criticize or question

police conduct - Due process requirements, including proper charging procedures and

correct court venue designation - The duty to intervene when fellow officers are violating

constitutional rights

272.     The need for training in these areas was obvious and known to the County. The

risks of inadequate training—including unjustified felony stops, excessive force,

malicious prosecutions, and violations of due process—were highly predictable.

273.     Despite the obvious need, the County failed to provide adequate training,

demonstrating deliberate indifference to the constitutional rights of individuals like

Plaintiff.

274.     The inadequate training directly caused the constitutional violations suffered by

Plaintiff. Had Defendants been properly trained on the constitutional limits of felony

stops, the duty to investigate, and proper procedures, the violations would not have

occurred.

**B. Failure to Supervise and Discipline**

275.    Upon information and belief, the County of Los Angeles has failed to adequately supervise deputies in the field to ensure compliance with constitutional standards.

276.    Upon information and belief, the County has failed to implement meaningful oversight mechanisms to detect and deter constitutional violations by deputies.

277.    Upon information and belief, the County has a custom and practice of failing to discipline deputies who engage in constitutional violations, thereby sending a message that such conduct is tolerated or condoned.

278.    Upon information and belief, Defendants Britto and Garcia have not been disciplined for the conduct alleged in this Complaint, despite the severity and clarity of the constitutional violations.

279.    The County's failure to supervise and discipline deputies demonstrates deliberate indifference to the constitutional rights of individuals and has fostered a culture in which deputies believe they can violate rights without consequence.

**C. Pattern and Practice**

280.     Upon information and belief, the constitutional violations committed by Defendants Britto and Garcia are part of a widespread pattern and practice within the Los Angeles County Sheriff's Department of: - Conducting unjustified felony stops based on minor infractions or insufficient suspicion - Failing to investigate exculpatory evidence before using force or initiating prosecutions - Retaliating against individuals who assert their constitutional rights or criticize police conduct - Fabricating or exaggerating evidence to justify arrests and prosecutions - Engaging in prolonged detentions without legal justification - Conducting unlawful searches of vehicles during traffic stops

281.     This pattern and practice has been so widespread and persistent as to constitute a custom or policy of the County, even if not formally adopted.

282.     The County has been on notice of this pattern through citizen complaints, lawsuits, media reports, and internal affairs investigations, yet has failed to take corrective action.

**D. Ratification**

283.     Upon information and belief, the County of Los Angeles, through its policymaking officials in the Sheriff's Department, has ratified the conduct of Defendants Britto and Garcia by: - Failing to investigate the incident despite its severity - Failing to discipline Defendants for clear constitutional violations - Defending Defendants' conduct

in response to Plaintiff's complaints - Treating the constitutional violations as acceptable conduct

284.     Such ratification by final policymakers constitutes official policy and makes the County liable for the constitutional violations.

**E. Causation**

285.     The County's policies, customs, practices, and failures to train, supervise, and discipline were the moving force behind the constitutional violations suffered by Plaintiff.

286.     But for the County's deliberate indifference to constitutional training and supervision, the violations would not have occurred.

287.     As a direct and proximate result of the County's policies, customs, and failures, Plaintiff suffered all damages alleged herein.

288.     The County of Los Angeles is liable to Plaintiff for compensatory damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant County of Los Angeles on Count Eleven and award compensatory damages, costs, attorney's fees, and such other relief as the Court deems just and proper.

# VI. DAMAGES

289.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer substantial damages, including but not limited to:

**A. Compensatory Damages in an amount for no less than $ 50,000,000,000.00**

**1. Physical and Emotional Distress**

- Severe emotional distress during the 40-minute detention at gunpoint

- Ongoing fear and terror that he would be killed or seriously injured by Defendants

- Acute psychological trauma from being held at gunpoint, physically grabbed, and subjected to false accusations

- Humiliation and degradation from being treated as a criminal despite having committed no crime

- Anxiety and hypervigilance around law enforcement

- Post-Traumatic Stress Disorder (PTSD) symptoms, including intrusive memories, nightmares, and heightened startle response

- Depression and feelings of helplessness

- Ongoing psychological harm requiring mental health treatment and medication

**2. Loss of Liberty in an amount no less than $ 50,000,000,000.00**

- Deprivation of liberty for over 40 minutes on December 27, 2022

- Constructive deprivation of liberty for nearly two years (December 27, 2022 - December 27, 2024) while subject to potential arrest on the false citation

- Fear of arrest at any time throughout the pendency of the malicious prosecution

**3. Invasion of Privacy in an amount no less than $ 50,000,000,000.00**

- Unlawful search of Plaintiff's vehicle and violation of his privacy interests

**4. Damage to Reputation and Dignity in an amount no less than $ 50,000,000,000.00**

- Being publicly treated as a criminal at a busy intersection

- Damage to Plaintiff's sense of security and trust in law enforcement

- Violation of Plaintiff's dignity and personhood

**5. Economic Losses**

- Lost time and expenses associated with multiple trips to Airport Courthouse

- Lost time investigating whether a warrant existed and attempting to resolve the false
  citation

- Costs of mental health treatment and medication (past and future)

- Other economic losses to be proven at trial

**6. Chilling of Constitutional Rights in an amount no less than $ 50,000,000,000.00**

- Chilling of Plaintiff's willingness to exercise his First Amendment rights to criticize or
  question law enforcement

- Ongoing fear of retaliation if he asserts his constitutional rights in future encounters with
  law enforcement

**B. Punitive Damages in an amount no less than $ 50,000,000,000.00**

290.    Defendants Britto and Garcia acted with reckless disregard for and deliberate indifference to Plaintiff's clearly established constitutional rights.

291.    Defendants Britto and Garcia acted with malice toward Plaintiff, including by: - Fabricating the existence of a warrant - Falsely claiming Plaintiff was not who he said he was, even after verification - Deliberately refusing to investigate readily available exculpatory evidence (the front license plate) - Retaliating against Plaintiff for exercising his First Amendment rights - Directing Plaintiff to the wrong courthouse to deny him due process - Pursuing a malicious prosecution based on false statements

292.    Defendants Britto and Garcia's conduct was willful, wanton, and oppressive.

293.    Punitive damages are warranted to punish Defendants for their egregious misconduct and to deter them and other law enforcement officers from engaging in similar conduct in the future.

294.    Plaintiff seeks punitive damages against Defendants Britto and Garcia in an amount to be determined by the jury.

## C. Costs and Attorney's Fees

295.    Plaintiff is entitled to recover his reasonable costs and attorney's fees pursuant to 42 U.S.C. § 1988(b).

# VII. JURY DEMAND

296.     Plaintiff hereby demands a trial by jury on all issues so triable as a matter of right.

# VIII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff HECTOR GUTIERREZ respectfully requests that this Court enter judgment in his favor and against Defendants, and award the following relief:

1. **Compensatory damages** in an amount to be proven at trial for all economic and non-economic losses, including but not limited to emotional distress, mental anguish, humiliation, loss of liberty, invasion of privacy, damage to reputation, medical and psychological treatment costs, and other damages; in an amount no less than $ 50,000,000,000.00

2. **Punitive damages** against Defendants Britto and Garcia in an amount sufficient to punish their egregious conduct and deter future violations; in an amount no less than $ 50,000,000,000.00

3. **Costs of suit**, including reasonable attorney's fees pursuant to 42 U.S.C. § 1988(b);

4. **Pre-judgment and post-judgment interest** as allowed by law; in an amount no less than $ 50,000,000,000.00

5. Such other and further relief as this Court deems just, proper, and equitable.

Executed on  December 27, 2025,  at Los Angeles, California.


**Respectfully submitted,**




_Hector Gutierrez_
HECTOR GUTIERREZ, Plaintiff



Hector Gutierrez
1015 Rosewood Ave
Inglewood CA. 90301
424-200-1504
heg254@aol.com
**Pro -Se Plaintiff**
**Hector Gutierrez**